J. A03006/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARK P. WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 2798 EDA 2014 |

Appeal from the Judgment of Sentence September 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0005669-2013

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 11, 2016**

Appellant, Mark P. Williams, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for Unlawful Contact with Minor, Institutional Sexual Assault, Endangering Welfare of Children (EWOC), and Corruption of Minors.[1] After careful review, we affirm on the basis of the trial court's opinion.

The trial court stated the relevant facts as follows:

Appellant, Mark Williams, was 56 years old and employed as the Dean of students at Northeast High School in Philadelphia, PA on January 21, 2013, the date of the incident. Appellant first met the [17-year-old] victim, LRM, in early December of 2012 when she transferred to Northeast High from South Philadelphia High School after moving in with her adopted mother. The transition was difficult for LRM who got into trouble for uniform violations and acting up in class. When LRM got into trouble, she would be

---

[1] 18 Pa.C.S. § 6318, 18 Pa.C.S. § 3124.2, 18 Pa.C.S. § 4304, and 18 Pa.C.S. § 6301, respectively.

sent to Appellant's office for these disciplinary issues. By the end of December, LRM was spending most mornings in Appellant's office talking with him about personal matters. In the beginning of January, Appellant asked the victim for her phone number. LRM stated that she gave Appellant her number because she felt that they were in a relationship. She also sent him a photo of herself at his request. Appellant and LRM then started regularly communicating, texting and having phone conversations with each other. Phone records showed numerous calls and texts between the two that month. They spoke to each other at night and on weekends as well as during the daytime. Phone records showed one phone conversation lasting approximately 45 minutes and another 86 minutes in duration. The mornings the victim would spend in Appellant's office now extended to 5th period, and the two even set up a date with each other. Appellant told the victim she was beautiful without her Muslim veil on her face.

On January 21, 2013, Martin Luther King Day, LRM told her mother, Larhonda Rines, that she was going out with friends. When she did not return her mother called and texted her numerous times but got no response. LRM had gone to a party the night before in West Philadelphia and called Appellant that morning to pick her up. Appellant picked her up and drove her back to his house in West Chester, arriving there at approximately 12:30 p.m. Appellant then gave her a tour of his residence[,] which ended in his bedroom where he asked if he could rub her feet. Appellant then engaged in consensual sexual intercourse with LRM, after which she took a shower in the master bathroom. Appellant then took LRM to a nearby Outback for dinner, during which they planned their next date. Appellant then drove LRM back to West Philadelphia.

Larhonda Rines turned off LRM's cell phone that day after she failed to return home and failed to answer any calls or texts. LRM then borrowed her [30-year-old] sister's cell phone that night to call Appellant. Appellant called back and identified himself to LRM's sister, Kenyetta Parham, as an employee of Northeast High. LRM told Kenyetta the call was for her and took the phone. Kenyetta said the conversation sounded like LRM was talking to a boyfriend. Sensing the interaction was inappropriate, Kenyetta alerted Larhonda Rines about the situation. LRM then told Kenyetta that Appellant had taken her to his house where they had sex. Larhonda Rines testified that

LRM also told her that she and Appellant had engaged in sexual relations at this house when she went to visit LRM in juvenile detention.

Appellant took the stand in his own defense denying any sexual or otherwise inappropriate relations with the victim. He gave different accounts of certain events that the victim described. Appellant also presented a number of character witnesses at trial.

Trial Court Opinion, filed 4/29/15, at 2-4 (citations omitted).

On June 9, 2014, a jury found Appellant guilty of all charges. On September 12, 2014, the trial court sentenced Appellant to one and one-half to three years' incarceration, followed by four years' probation.[2] Appellant filed a post-sentence motion on September 19, 2014, which the trial court denied on September 23, 2014. Appellant filed a timely Notice of Appeal on September 25, 2014. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raised five issues on appeal:

1. Were the verdicts for [Unlawful Contact with Minor, Institutional Sexual Assault, EWOC, and Corruption of Minors] against the weight of the evidence?

2. Were the verdicts for the crimes listed in the first question not supported by sufficient evidence?

---

[2] The trial court sentenced Appellant to concurrent terms of one to two years' imprisonment, followed by four years' probation for Unlawful Contact with Minor and Institutional Sexual Assault. The trial court imposed a consecutive term of 6 to 12 months' imprisonment for EWOC, followed by four years' probation, as well as a concurrent term of four years' probation for Corruption of Minors.

- 3 -

3. Did Judge Anhalt err in not allowing [Appellant] through his attorney to question the victim on her open case of arson, but only to refer to it as a serious felony? Did this limitation prevent [Appellant] from fully exploring the bias of the witness and the fact this open case might affect her testimony and thereby deny [Appellant] his right to due process and a fair trial?

4. Did Judge Anhalt err by inappropriately interjecting herself in the trial by cross[-]examining [Appellant] in a manner that would raise questions with the jury that Judge Anhalt did not believe or accept the testimony of [Appellant], thereby denying [Appellant] his right to due process and a fair trial?

5. Did Judge Anhalt err in allowing another assistant district attorney to testify as to her contact with the alleged victim and her testimony? Was allowing another lawyer from the same office to testify on critical testimony in violation of Rule of Professional Conduct 3.7 and did this unfairly enhance the victim's testimony since the witness was an associate of the advocate in this case?

Appellant's Brief at 5-6 (citations omitted).[3]

The Honorable Diana L. Anhalt, sitting as the trial court, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellant's claims on appeal. After a careful review of the parties' arguments and the record, we affirm on the basis of the trial court's opinion. **See** Trial Court Opinion, filed 4/29/15, at 4-9 (concluding: (1) the verdicts were not against the weight of the evidence and the trial court did not abuse its discretion by rejecting Appellant's weight of the evidence claim; (2) the evidence was sufficient to support Appellant's convictions; (3) trial court properly precluded counsel from mentioning the

---

[3] Although the trial court also addressed a sentencing issue in its 1925(a) opinion, Appellant has abandoned the sentencing issue on appeal.

word arson when referring to victim's open case due to unfair prejudice, but permitted counsel to use the phrase "serious felony" to probe victim's bias and motive to fabricate on cross-examination; (4) trial court did not inappropriately question Appellant during cross-examination; trial court did not engage in unduly protracted questioning or conduct itself in a biased manner when asking questions during trial; and (5) trial court properly allowed another Assistant District Attorney to testify about her interactions with the victim; ADA did not improperly bolster victim's testimony because ADA did not offer personal assurances of the victim's veracity and ADA did not suggest that other information not before the jury supported victim's testimony).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2016